IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| John A. Hendrix, | ) | C/A No. 3:09-2174-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| AT&T, *also known as* BellSouth | ) | |
| *Telecommunications, Inc.*, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, John A. Hendrix ("Hendrix"), filed this employment discrimination action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., against the defendant, AT&T ("AT&T"). Hendrix alleges that AT&T violated the ADA by failing to accommodate his blindness.[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 41.) Having carefully considered the parties' submissions and the applicable law, the court finds that the defendant's motion should be granted.

**BACKGROUND**

In 1970 Hendrix began working for BellSouth Telecommunications, Inc. ("BellSouth"), which was later acquired by AT&T. He became an Electronic Technician ("ET") and served as such until his separation from employment in 2008. During most of Hendrix's career, ETs performed

---

[1] Hendrix also originally asserted claims for gross negligence and conspiracy against AT&T. He has expressly abandoned his gross negligence claim. (See Pl.'s Mem. Opp'n Mot. Summ. J. at 1-2, ECF No. 46 at 1-2.) Although it is not entirely clear from the pleadings whether counsel also abandoned the conspiracy claim, the court finds for the reasons stated below that, even if the conspiracy claim has not been abandoned, AT&T is nevertheless entitled to summary judgment on that claim. See infra Part C.

technical work pertaining to the transmission of communications data. Hendrix performed these duties from the Senate Street Central Office ("CO") in Columbia, South Carolina. In 2006-2007, BellSouth was acquired by AT&T, resulting in the consolidation of several work groups, with one work group of ETs headquartered at the Senate Street location. Hendrix reported directly to James R. Armstrong, who reported to Mike Crouch, the Area Manager for Network Services.

As part of their duties, ETs rotated weekend and holiday duty. Weekend duty involved extra pay and required the ET on duty to cover two locations in addition to the Senate Street CO, which occasionally necessitated some travel, typically in a company-owned vehicle. Hendrix, who is blind, cannot drive.[2] His condition also renders it difficult for him to maneuver in unfamiliar environments. From approximately 2000 to 2007, Hendrix and another ET had an arrangement for that other ET to work Hendrix's weekend shifts. In January 2008, however, that arrangement ended. Hendrix worked one assigned weekend after that; Crouch then instructed Armstrong to remove Hendrix from the weekend work schedule due to safety concerns with Hendrix's having to travel to other, less familiar locations when on duty. Hendrix suggested that his wife could drive him to any calls requiring him to travel to other AT&T locations while on duty. Crouch rejected this proposal.

After Hendrix was removed from weekend rotations, a group of ETs in Hendrix's work group filed a union grievance with AT&T complaining about Hendrix's being excused from the weekend schedule rotation as well as expressing concerns regarding Hendrix's ability to perform required job functions. The grievance also appears to reference the portion of the collective bargaining agreement pertaining to health and safety. (Union Grievance, ECF No. 41-3 at 32.) The situation was

---

[2] Hendrix apparently suffers from choroideremia, which causes him to see only very close objects and only within a severely constricted field of vision. Since 1995 he has been designated as "legally blind" by health care providers and in 2009 he began receiving social security disability benefits.

repeatedly discussed, both among the management level employees and with Hendrix. Hendrix again suggested that he could arrange for his own transportation by having his wife drive him during his weekend duty. AT&T again denied that request and informed Hendrix that his employment would be terminated.

Despite this, in mid May of 2008 Crouch requested that Hendrix perform work regarding a project near Charleston, South Carolina. Hendrix requested that he be permitted to work onsite. With Crouch's permission, Hendrix's wife drove Hendrix to the project site for a weekend of work. Two other ETs also were sent to that work site and acted as Hendrix's guide during that weekend project. Following Hendrix's work on the Charleston project, AT&T placed Hendrix's name in a job bank for fifty-two weeks in an attempt to place him in a another position, but no suitable positions were found for him. His employment with AT&T then ended. Hendrix exercised his pension rights and currently receives retiree benefits from AT&T.

## DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987). A fact is "material"

if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor.  Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).  The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms.  See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     ADA Claim**

The ADA prohibits employment discrimination against "a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a).[3]  To establish a *prima facie* case of employment discrimination based upon a disability, a plaintiff must show:  (1) that he was a qualified individual with a disability; (2) that he was discharged; (3) that he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) that the circumstances of his

---

[3] The facts giving rise to this action predate the effective date of the 2008 amendments to the ADA; thus, the earlier version of the statute applies.  Accordingly, all references to the ADA statutes in this Report and Recommendation are to the statutes as they existed prior to January 1, 2009, the effective date of the 2008 amendments.

discharge raise a reasonable inference of unlawful discrimination.[4]  See Rohan v. Networks Presentations LLC, 375 F.3d 266, 272 n.9 (4th Cir. 2004); Haulbrook v. Michelin N. Am., 252 F.3d 696 (4th Cir. 2001).  Here, AT&T challenges Hendrix's ability to show that he was a qualified individual performing his job at a level that met AT&T's legitimate expectations and that he was discharged because of his blindness.

Under the ADA, "qualified individual with a disability" means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8). In determining whether a particular function is essential, a court may consider (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of past incumbents in the job; and (7)

---

[4] The Fourth Circuit has used at least two other tests to determine whether a plaintiff has established a *prima facie* case under the ADA.  See, e.g., Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001) ("In a failure to accommodate case, a plaintiff establishes a prima facie case by showing '(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations.' ") (quoting Mitchell v. Washingtonville Ctr. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999)); Halperin v. Abacus Tech. Corp., 128 F.3d 191, 197 (4th Cir. 1997) ("[T]o establish a prima facie case under the ADA, Halperin must prove that (1) he has a disability; (2) he is otherwise qualified for the job in question; and (3) he was discharged solely because of his disability.").  In the case at bar, the parties both use the older test set forth in Halperin.  Notably, after Halperin, the Fourth Circuit in Rhoads distinguished between wrongful discharge and failure to accommodate claims arising under the ADA and recognized slightly different *prima facie* tests for each.  It appears that Hendrix may be alleging both and the test set forth above appears to account for both types of claims.  See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995) (observing that the *prima facie* case may vary depending upon the factual situation and the claim alleged) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 n.13 (1973)).  In any event, the court observes that whichever of the three tests employed by the Fourth Circuit in ADA cases is applied here, the plaintiff cannot meet all of the required elements.

the current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3).[5] This list is non-exclusive and evidence described specifically in the regulations is entitled to no greater weight than other relevant types of evidence as to whether a job function is essential. See 29 C.F.R. pt. 1630, app. § 1630.2(n).

Courts have recognized that disabilities resulting in vision and spatial problems can render an employee unqualified within the meaning of the ADA. See Riley v. Weyerhaeuser Paper Co., 898 F. Supp. 324, 327-28 (W.D.N.C. 1995) (finding that a former employee's vision and balance problems rendered him unqualified under the ADA to work around and operate heavy machinery); Shin v. Univ. of Md. Med. Sys. Corp., 369 Fed. Appx. 472 (4th Cir. 2010) (finding that a medical intern was not able to perform the essential function of providing competent medical care to patients with or without reasonable accommodation to his significant impairment in visual-spatial reasoning and visual memory and attention deficit disorder and was therefore rendered unqualified under the ADA); see also Martinson v. Kinney Shoe Corp., 104 F.3d 683 (4th Cir. 1997) (finding that an epileptic plaintiff's inability to perform the essential function of maintaining store security at all times as required of a store manager rendered him unqualified under the ADA). Moreover, the court observes that the written job description for an ET included driving a company vehicle to and from other work sites. (See ET Job Brief and Qualifications; ECF No. 41-3 at 27-29); see also 42 U.S.C. § 12111(8) ("[C]onsideration shall be given to the employer's judgment as to what functions of the job are essential, and if an employer has prepared a written description . . . this description shall be considered evidence of the essential functions of the job."). Hendrix has failed to refute AT&T's evidence showing that, following the acquisition and resultant consolidation of work groups in 2007,

---

[5] On March 25, 2011, this regulation was amended effective as of May 24, 2011. As this action predates these amendments, all citations to this regulation are to the version in existence prior to this amendment.

driving to different work sites was an essential job function for an ET and that, post-acquisition, other incumbent ETs were required to perform this function. (See Hendrix Dep. at 65, 76, 103-05, 111, ECF No. 41-2 at 19, 21, 28-29, 30; Def.'s Resp. to Pl.'s Interrog. No. 6, ECF No. 41-6 at 6-7.) Further, he has not disputed AT&T's evidence that the consequence of excusing Hendrix from weekend duty was a grievance by other ETs alleging that such action violated the collective bargaining agreement. Accordingly, the court concludes that Hendrix has not refuted AT&T's proof that, after the acquisition of BellSouth by AT&T, driving to other work sites during weekend duty was an essential function of the ET position.

Resolution of this issue therefore turns on whether a reasonable jury could find based on the record presented that Hendrix could perform these essential functions with reasonable accommodation. "Reasonable accommodation" means "[m]odifications or adjustments . . . that enable a qualified individual with a disability to perform the essential functions of [a] position." 29 C.F.R. § 1630.2(o)(1)(ii). For an accommodation to be reasonable within the meaning of the ADA, it must not impose an undue hardship on the operation of the employer's business. See 42 U.S.C. § 12112(b)(5)(A). To show that an accommodation is reasonable, a plaintiff must show that the accommodation on its face will be feasible for the employer. See Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 (1st Cir. 2001). The determination of "[w]hether a particular form of assistance would be required as a reasonable accommodation must be determined on an individualized, case by case basis . . . ." 29 C.F.R. pt. 1630, app. § 1630.9.

Courts within this circuit have held that while temporary training or assistance for a disabled employee may be a reasonable accommodation, the ADA does not require an employer to permit an additional person permanently to perform an essential function of a disabled employee's position. See EEOC v. Dollar Gen. Corp., 252 F. Supp. 2d 277, 292 (M.D.N.C. 2003) (citing Martinson, 104

F.3d 683). Moreover, within the context of other employment discrimination statutes, a district court in this circuit has found that an employee was not meeting his employer's legitimate expectations where the employee's wife was performing or assisting the employee in performing his job duties. See Lewis v. Extended Stay Am., Inc., 454 F. Supp. 2d 453, 455-56 (M.D.N.C. 2006) (finding that the plaintiff, who was blind, had signed a valid release regarding his ADA claim but further finding that the plaintiff's *age* discrimination claim failed because he could not establish that he was meeting his employer's legitimate expectations, since the plaintiff's wife was helping him do his job). Similarly, the ADA does not require employers to reallocate essential job functions to other employees. See 29 C.F.R. pt. 1630, app. § 1630.2(o); Martinson, 104 F.3d at 687; Carrozza v. Howard Cnty., Md., 45 F.3d 425 (4th Cir. 1995) (unpublished table decision).  While Hendrix repeatedly argues that he successfully worked one weekend rotation, he has failed to refute AT&T's evidence that AT&T directed another ET, Laurie Munn, to perform the work outside of the Senate Street central office during that shift.  Similarly, although Hendrix contends that AT&T should have permitted his wife to drive him to other work sites, he advances no compelling argument refuting AT&T's position that permitting Hendrix's wife—who is not an AT&T employee but rather is employed full-time elsewhere—to drive him on AT&T business, thus potentially exposing AT&T to liability for her actions, and requiring AT&T to authorize her to enter a central office or other work site such that she could serve as Hendrix's guide, would subject AT&T to undue hardship and was not feasible.  On this record, no reasonable jury could find that AT&T's denial of Hendrix's request to permit his wife to serve *permanently* as his chauffeur and guide so that he could perform essential job functions was unreasonable.  See EEOC v. Dollar Gen. Corp., 252 F. Supp at 291-92.

C.    **Conspiracy Claim**

As previously noted, it appears that Hendrix has abandoned his conspiracy claim against AT&T. (Hendrix Dep. at 160, ECF No. 41-2 at 42.) However, even if he has not, AT&T has demonstrated that Hendrix's conspiracy claim fails based on the undisputed facts. Hendrix's memorandum in opposition contains absolutely no legal argument regarding this claim. Moreover, Hendrix's deposition testimony shows that he has no evidence supporting his conspiracy claim. (Hendrix Dep. at 160-162, ECF No. 41-2 at 42-43.) Accordingly, AT&T is entitled to summary judgment on this claim as well. See Fed. R. Civ. P. 56(c).

**RECOMMENDATION**

Hendrix cannot establish a *prima facie* case under the ADA because he cannot show that he could perform the essential functions of his job with reasonable accommodation. Moreover, Hendrix has abandoned his negligence claim and apparently his conspiracy claim as well, and even if he has not, AT&T is entitled to summary judgment on the conspiracy claim in any event. Accordingly, the court recommends that AT&T's motion for summary judgment (ECF No. 41) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

April 20, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).