IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| John A. Hendrix, ) | C/A No. 3:09-cv-2174-CMC-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| AT&T, aka BellSouth Telecommunications, Inc., ) | |
| and Communications Workers of America ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Through this action, Plaintiff John A. Hendrix ("Hendrix") seeks recovery for gross negligence, conspiracy, and alleged employment discrimination by his former employer, Defendant AT&T, aka BellSouth Telecommunications, Inc. ("AT&T"). Along with his gross negligence and conspiracy claims, Hendrix alleges that AT&T violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, by failing to accommodate his blindness.

This matter is now before the court on AT&T's motion for summary judgment. Dkt. No. 41. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(e), (g), DSC, the matter was referred to United States Magistrate Judge Paige J. Gossett for pre-trial proceedings and a Report and Recommendation ("Report"). On April 20, 2011, the Magistrate Judge issued a Report recommending that AT&T's motion for summary judgment be granted. On May 8, 2011, Hendrix filed objections to the Report. For the reasons set forth below, the court adopts the Report and AT&T's motion for summary judgment is granted.

## STANDARD

The Magistrate Judge makes only a recommendation to this court. The recommendation has

1

no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of an objection, the court reviews the Report for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation") (citation omitted).

## PROCEDURAL AND FACTUAL BACKGROUND

Hendrix originally filed this action against two Defendants, AT&T and Communications Workers of America ("CWA"), the collective bargaining agent, or union, for AT&T employees. Dkt. No. 1. He asserted state law tort claims of gross negligence and conspiracy against both AT&T and CWA and a federal employment discrimination claim against AT&T for violation of the ADA. *Id.* CWA moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that Hendrix's state law claims were preempted by federal law. Dkt. No. 11. CWA's motion was granted. Dkt. No. 30. Subsequently, Hendrix expressly abandoned his gross negligence claim against AT&T (*see* Dkt. No. 46 at 1-2) leaving the court to consider only his claims for conspiracy and employment discrimination against AT&T.

The Report contains a detailed statement of the facts pertinent to the resolution of AT&T's motion. Hendrix's objections did not raise any issues in regard to the accuracy of this summary.

The court thus incorporates the Report's factual summary for purposes of this order. *See* Dkt. No. 50 at 1-3.

**DISCUSSION**

Hendrix alleges that AT&T conspired, through its agents, to harm Hendrix causing him to be terminated and removed from his position as an Electronic Technician ("ET") and violated the ADA by failing to accommodate his blindness.[1] Dkt. No. 1 at 6-7, 9-10. AT&T has moved for summary judgment. Dkt. No. 41. The Report recommends granting AT&T's motion. Dkt. No. 50.

**I.      Conspiracy Claim**

As to Hendrix's conspiracy claim, the Report finds that Hendrix has abandoned this claim both by statement of counsel during a deposition and by failure to raise any legal argument regarding conspiracy in his response to AT&T's summary judgment motion. Dkt. Nos. 41-2 at 42 ("Counsel have discussed this and we agree . . . that [Hendrix] is no longer pursuing the conspiracy claim") and 50 at 1 n.1 and 9. Hendrix has not disputed the Report's finding. Whether or not Hendrix abandoned this claim, it is clear from the record that Hendrix does not possess and has not proffered any evidence beyond his own suspicions that AT&T engaged in a conspiracy against him.[2] *See* Dkt. No. 41-2 at 42-43. Therefore whether or not Hendrix has abandoned this claim, AT&T is entitled to summary judgment as to the conspiracy claim.

---

[1] Hendrix is legally blind due to a condition known as choroideremia, which severely constricts his field of vision. Dkt. No. 41-3 at 34.

[2] In his objections, Hendrix alludes to possible conspiratorial activity between AT&T and CWA. *See* Dkt. No. 51 at 3. However, as stated above, Hendrix cites nothing in the record to support this allegation, and it does not change the court's ultimate conclusion that Hendrix abandoned that claim.

**II.     ADA Claim**

Hendrix has filed objections arguing against adopting the Report because the Magistrate Judge erred in concluding that (1) driving an automobile is an essential function of the ET position and (2) having Hendrix's wife serve as his guide and driver is not a reasonable accommodation. Dkt. No. 51. Having reviewed the record and the objections under the appropriate legal standard, the court adopts the Report and finds that Hendrix has failed to establish a *prima facie* case of employment discrimination in violation of the ADA.

**Essential Function.**  Hendrix argues that driving should not be considered an essential function of the ET job, and, therefore, his inability to drive due to his blindness did not render him unqualified for his position. Dkt. No. 51 at 3-5. As stated in the Report, as part of establishing a *prima facie* case of discrimination in violation of the ADA, Hendrix must show that he is a "qualified individual with a disability" meaning that "with or without accommodation, [he] can perform the essential functions of the employment position that [he] holds or desires."[3]  42 U.S.C. § 12111(8). In determining whether a particular function is essential, courts may consider (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of past incumbents in the job;

---

[3] As stated in the Report, the facts giving rise to this action predate the effective date of the 2008 amendments to the ADA; thus, the earlier version of the statute applies. Accordingly, all references to the ADA are to the statute as it existed prior to January 1, 2009, the effective date of the 2008 amendments.

The Report also notes that it is unclear whether Hendrix's ADA claim against AT&T is for wrongful discharge or failure to accommodate or both. *See* Dkt. No. 50 at 5 n.4. However, under either theory, Hendrix must establish that he is a qualified individual as defined by the statute.

and (7) the current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3).[4] This list is non-exclusive and factors described specifically in the regulations are entitled to no greater weight than other relevant factors as to whether a job function is essential. *See* 29 C.F.R. pt. 1630, app. § 1630.2(n).

Hendrix argues that he "has not driven for a number of years with the full knowledge of company officials and apparently no affect on [his] ability to perform his job." Dkt. No. 51 at 3. He also argues that although being able to drive a company vehicle is one of the 26 job responsibilities of an ET, because driving is only necessary when an ET works weekends it is not an "essential function" of being an ET. Dkt. No. 51 at 4 (citing Dkt. No. 41-5 at 9). However, as stated in the Report, these arguments fail to refute AT&T's evidence showing that after the company was consolidated in 2007, driving to different work sites particularly on weekends became an essential job function and all incumbent ETs were required to perform this function. *See* Dkt. Nos. 41-2 at 19, 21, 28-29, 30, 41-4 at 11-12, and 41-6 at 6-7.

The job requirements and expectations for ETs changed dramatically in late 2007 due to AT&T's acquisition of BellSouth. Before the acquisition, there were separate groups of ETs who specialized in different fields and were responsible for servicing three central offices, and one of those groups was also responsible for servicing two satellite offices. Dkt. No. 41-2 at 12. After the acquisition, the ET groups were consolidated and merged, so that all ETs were then responsible for servicing all three main offices and the two satellite offices. *Id.* The ETs in the newly consolidated groups were expected to work as "four walls" technicians, meaning they were required to handle any

---

[4] As stated in the Report, this regulation was amended effective May 24, 2011. As this action predates these amendments, the court considers the version in existence prior to amendment.

5

ET work within the four walls of the central and satellite offices. Dkt. No. 41-6 at 6-7. On any given day, and especially on weekends when fewer ETs were on the work schedule, any ET could be asked to "rove" to one of the main offices or satellite locations. Dkt. No. 41-2 at 12. Before this consolidation, Hendrix had served as an ET specializing in work with transmission systems in the Senate Street central office and visited other offices very infrequently. Dkt. Nos. 41-4 at 19 and 41-6 at 6. Therefore, the fact that Hendrix was able to perform his job completely before the consolidation has little bearing on whether driving was an essential function of the ET position after the consolidation.[5] Post-consolidation, all ETs were put on a weekend and holiday rotation, which often required driving to one of five different work sites.[6] Hendrix was able to avoid the driving requirement until January 2008 because a co-worker routinely volunteered to fill-in for Hendrix and

---

[5] This is not a case where an employer knowingly changed a job description in order to force out a disabled employee. Rather, the court notes that there is no evidence in the record that the decision to merge ET groups or the decision to change from using specialized ETs to "four walls" ETs had anything to do with Hendrix or his disability.

Hendrix was employed by AT&T and its predecessor BellSouth from 1970 to 2008. Dkt. No. 41-2 at 14. He has been legally blind since 1995, a condition which was known to his employer. Dkt. No. 1 at ¶ 9. Even though the job description of an ET contained tasks he could not perform due to his blindness, Hendrix's specialized ET position, working only with transmission systems, did not require that he perform those tasks. Unfortunately due to technological and economic concerns after the acquisition, the specialized ET position was eliminated in favor of the "four walls" ET position. *See* Dkt. No. 41-4 at 10. This change affected all ETs working in the area and resulted in several retirements. *Id.* at 11.

Even though the consolidation of ET groups rendered Hendrix unable to perform all tasks required of an ET, there is no evidence that rendering him unqualified was the purpose of the change. As the Seventh Circuit recently held, just as under the ADA an employer is not required "to create a new position or strip a current job of its essential functions, an employer is not required to maintain an existing position or structure that, for legitimate reasons it no longer believes is appropriate." *Gratzl v. Office of Chief Judges of the 12th, 18th, 19th, and 22nd Judicial Circuits*, 601 F.3d 674, 680 (7th Cir. 2010).

[6] The average total travel time for Hendrix's ET group in 2008 was approximately 16.61% per technician. Dkt. No. 41-6 at 11.

work his assigned weekends. Dkt. No. 41-2 at 21. Eventually neither this co-worker nor any other ETs were able to regularly cover Hendrix's weekend shifts. After January 2008, Hendrix's manager tried to excuse Hendrix from weekend duty, but this resulted in a grievance filed by other ETs asserting that excusing Hendrix from weekend work and forcing other employees to work his shifts violated their collective bargaining agreement. *See* Dkt. No. 41-6 at 6.

After reviewing the record, the court agrees with the Report that even though Hendrix was able to temporarily avoid weekend work where driving was required, after the acquisition and consolidation of ET work groups, the ability to drive became an essential function of the ET position, which Hendrix was unable to perform.

**Reasonable Accommodation.** Hendrix argues that even if the ability to drive is an essential function, having his wife serve as his driver and guide would be a "reasonable accommodation." In support of this argument, Hendrix cites to a weekend where his second-level supervisor allowed his wife to drive him to Johns Island, South Carolina for a one-time project. Dkt. No. 41-4 at 24-25. He argues that this instance shows that it was not a burden or a hardship to AT&T for his wife to serve as his driver. Dkt. No. 51 at 4.

For an accommodation to be reasonable within the meaning of the ADA, it must not impose an undue hardship on the operation of the employer's business. *See* 42 U.S.C. § 12112(b)(5)(A). To show that an accommodation is reasonable, a plaintiff must show that the accommodation on its face will be feasible for the employer. *See Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 259 (1st Cir. 2001). Having reviewed the record, the court agrees with the Report that Hendrix advances no compelling argument to refute AT&T's position that permitting his wife - who is not an AT&T employee - to drive him on AT&T business, thus potentially exposing AT&T to liability for her

actions, and requiring AT&T to authorize her to enter a central office or other work site such that she could serve as Hendrix's guide, would subject AT&T to undue hardship and is not feasible. *See* Dkt. No. 50 at 8. The one time Hendrix's wife drove him to Johns Island was for a special project where (1) there were two other AT&T employees on-site to act as his visual guides while working at the new location and (2) Hendrix had informed his supervisor that he and his wife were already planning to travel to visit family near Johns Island that weekend. Dkt. No. 41-4 at 24. This special situation is not indicative of his employer's regular practice or representative of a regular weekend shift Hendrix would be expected to perform as an ET where his wife would potentially be driving him to multiple sites specifically for AT&T business and there would be no other ETs at the job sites to serve as guides for Hendrix.[7]

Additionally, even though, as Hendrix argues, the accommodation would be necessary only once every four to eight weeks when Hendrix was scheduled for a weekend rotation (Dkt. No. 51 at 2), it would still be required on a permanent basis. Courts within this circuit have held that while temporary training or assistance for a disabled employee may be a reasonable accommodation, the ADA does not require an employer to permit an additional person permanently to perform an essential function of a disabled employee's position.[8] *See EEOC v. Dollar Gen. Corp.*, 252 F. Supp.

---

[7] On a given weekend day an ET could expect to get anywhere from six to twelve service calls that required he travel back and forth among the five office locations. Dkt. No. 41-4 at 15.

[8] Hendrix did successfully work one weekend rotation as an ET after the consolidation. However, that was only possible because AT&T directed another ET to perform all work outside of the Senate Street office during that weekend, which Hendrix would have otherwise been responsible to perform. Dkt. No. 41-2 at 30. While this situation was arranged for one weekend, the ADA does not require employers to reallocate essential job functions to other employees. *See* 29 C.F.R. pt. 1630, app. § 1630.2(o); *Martinson*, 104 F.3d at 687; *Carrozza v. Howard Cnty., Md.*, 45 F.3d 425 (4th Cir. 1995) (unpublished).

8

2d 277, 292 (M.D.N.C. 2003) (citing *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683 (4th Cir. 1997)).

For the reasons stated above, the court agrees with the Report's conclusion that no reasonable jury could find that AT&T's denial of Hendrix's request to permit his wife to serve permanently as his driver and guide was unreasonable.

## CONCLUSION

For the reasons set forth above, the court adopts the Report and finds that Hendrix has failed to establish a *prima facie* case under the ADA because he cannot show that he could perform the essential functions of his job with reasonable accommodation. Hendrix has abandoned his gross negligence claim and likely his conspiracy claim as well, and even if he has not, AT&T is entitled to summary judgment on the conspiracy claim. *See infra* Part I. Therefore, AT&T's motion for summary judgment is granted in full as to all of Hendrix's claims.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
June 6, 2011